IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


JOSEPH D. EBERT,

    Plaintiff,

v.                                   Civil Action No. 5:10CV46
                                              (STAMP)
DESCO CORPORATION,
a foreign corporation,
BELLOFRAM CORPORATION,
a foreign corporation,
BELLOFRAM CORPORATION,
a foreign corporation
d/b/a MARSH BELLOFRAM
and MARSH BELLOFRAM,

    Defendants.


**MEMORANDUM OPINION AND ORDER
DISMISSING DEFENDANTS BELLOFRAM CORPORATION
D/B/A MARSH BELLOFRAM AND MARSH BELLOFRAM AND
DENYING DEFENDANTS' MOTION TO DISMISS AS TO
DESCO CORPORATION AND BELLOFRAM CORPORATION**

I.   Background

The above-styled civil action is before this Court as a result of a notice of removal filed by the defendants, in which they assert that federal jurisdiction is pursuant to 28 U.S.C. § 1332(a). The plaintiff commenced this civil action in the Circuit Court of Hancock County, West Virginia, alleging that the defendants' negligent, unlawful, reckless, and careless acts caused the plaintiff injury when a former employee of the defendants, Adam Farmer, entered the workplace through an unsecured entrance and shot the plaintiff several times in the hand, shoulder, and neck. Following removal of the action to this Court, the defendants filed

a motion to dismiss, to which the plaintiff responded. The defendants then filed a reply to the plaintiff's response.

For the reasons set forth below, this Court dismisses defendants Bellofram Corporation, d/b/a Marsh Bellofram and Marsh Bellofram and denies the defendants' motion to dismiss as to Bellofram Corporation and Desco Corporation.

## II. Applicable Law

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept all well-pled facts contained in the complaint as true. Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc, 591 F.3d 250, 255 (4th Cir. 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." Id. (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). This Court also declines to consider "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009).

It has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (3d ed. 1998). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure

56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. Id. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). Id. § 1357.

A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on is face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Nemet Chevrolet, 591 F.3d at 256 (quoting Iqbal, 129 S. Ct. at 1949). Detailed factual allegations are not required, but the facts alleged must be sufficient "to raise a right to relief about the speculative level." Twombly, 550 U.S. at 555.

III. Discussion

A. Dismissal of Defendants Bellofram Corporation, d/b/a Marsh Bellofram and Marsh Bellofram

The defendants argue that a suit cannot be maintained against Bellofram Corporation, d/b/a Marsh Bellofram and Marsh Bellofram, because these entities are simply trade names of Bellofram Corporation, an Ohio corporation. The plaintiff responds that the

defendants' own corporate literature holds out Marsh Bellofram as a corporation with a headquarters in Hancock County, West Virginia. (Pl.'s Resp. 3.) Additionally, the plaintiff argues that until the exact nature of the corporate structure is ascertained through further discovery, neither Marsh Bellofram nor Bellofram Corporation, d/b/a Marsh Bellofram should be dismissed. (Pl.'s Resp. 4.)

The West Virginia Code provides that,

> No business entity organized as a corporation . . . may conduct or transact any business in this state under any assumed name, or under any designation, name or style, corporate or otherwise, other than the name established by the original certificate establishing the business entity or by an amendment thereto, unless the business entity files in the Office of the Secretary of State an application for registration of trade name.

W. Va. Code § 47-8-4(a). In this case, there is no incorporated entity with the name Marsh Bellofram. A search of the West Virginia Secretary of State online business organization database reveals no organization with the name of Marsh Bellofram.[1] See West Virginia Secretary of State - Online Data Services, http://apps.sos.wv.gov/business/corporations/. In his complaint, the plaintiff states that Marsh Bellofram is a fictitious name used by the defendant, Bellofram Corporation. (Compl. ¶¶ 3-4.) As such, the inclusion of Bellofram Corporation, d/b/a Marsh Bellofram and Marsh Bellofram in the style of the case is redundant.

---

[1] Marsh Bellofram is registered as a fictitious name on the Ohio Secretary of State's website. See Ohio Secretary of State Business Filings, http://www.sos.state.oh.us/businessServices.aspx.

4

Bellofram Corporation was properly named as a defendant, as it was the plaintiff's employer, but because there is no corporate entity with the name Marsh Bellofram, the defendants Bellofram Corporation, d/b/a Marsh Bellofram and Marsh Bellofram are hereby dismissed.  See Steel v. Hahn Property Management Corp., 19 F.3d 22, *1 (7th Cir. 1994) ("[Y]ou can't sue a trade name. (Well, you can, but you will lose.  See Schiavone v. Fortune, 477 U.S. 21 (1986)).

The parties do not dispute that the plaintiff was employed by Bellofram Corporation at its plant in Newell, West Virginia.  While the plaintiff maintains that Desco Corporation has significant financial ties to the plaintiff, the defendants claim that Desco Corporation has no relationship with the plaintiff, instead, it is simply a management services company that oversees a group of companies, including Bellofram Corporation.[2]  (Defs.' Mot. to Dismiss 2.)  Although the exact nature of the relationship between Desco Corporation and the other entities at issue in this matter is unknown, this Court finds that Desco Corporation should not be dismissed solely upon the defendants' assertion that it is neither the plaintiff's employer nor the owner of the plaintiff's workplace. (Defs.' Mem. Supp. Mot. to Dismiss 3.)

---

[2]The plaintiff alleges that the direct deposit of the plaintiff's wages was made at the end of each pay period by a transfer of funds from "DESCO" directly into the plaintiff's account.  (Pl.'s Resp. 4.)  Moreover, the plaintiff was a participant in an employer-sponsored retirement plan named "Desco Corporation Thrift Plan & Trust," which was administered by the Retirement Department of Desco Corporation.  Id. at 4-5.

B.   <u>Failure to Maintain a Safe Workplace</u>

In his complaint, the plaintiff alleges that the defendants failed to maintain a reasonably safe work environment at the Newell facility.  Specifically, the plaintiff claims: (1) the defendants recognized security concerns related to Mr. Farmer following the termination of Mr. Farmer's employment at Marsh Bellofram; (2) the defendants had previously utilized security services at the plant due to safety concerns but terminated these services prior to March 24, 2008; (3) the defendants failed to warn the plaintiff and other employees of their specific concerns regarding Mr. Farmer; and (4) the defendants failed to properly warn the plaintiff and other employees of the possibility of workplace violence by failing to devise, implement, public, and disseminate policies and procedures for addressing issues of workplace violence to the plaintiff and other employees. (Compl. ¶¶ 13-15; 18.)

The defendants, on the other hand, allege that the shooting cannot be blamed on the termination of Mr. Farmer's employment, the result of termination of security services, or the failure to warn the plaintiff of security concerns, all of which occurred two years prior to the shooting incident.  Rather, the defendants claim that they had no knowledge of the factual circumstances surrounding the relationship between the plaintiff and Mr. Farmer and that they owed no duty to the plaintiff to protect him from the criminal act of Mr. Farmer.  According to the defendants, there is no cause of

action against a non-owner/non-employer for failure to maintain a safe workplace. (Defs.' Mem. Supp. Mot. to Dismiss 2-3.)

The motion to dismiss alleges that the defendants owed no duty to the plaintiff to protect him from the unanticipated assault of a third party that was unrelated to the plaintiff's employment.[3] However, West Virginia Code § 21-3-1 states as follows:

> Every employer shall furnish employment which shall be reasonably safe for the employees therein engaged and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render employment and the place of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees: Provided, that as used in this section, the terms "safe" or "safety" as applied to any employment, place of employment, place of public assembly or public building, shall include, without being restricted hereby, conditions and methods of sanitation and hygiene reasonably necessary for the protection of the life, health, safety, or welfare of employees or the public.

W. Va. Code § 21-3-1. Section 21-3-1 of the West Virginia Code clearly imposes a duty upon the plaintiff's employer to provide a reasonably safe workplace. See Rankin v. Pullen, 516 S.E.2d 501, 505 (W. Va. 1999) (The goal of W. Va. Code § 21-3-1 et seq. is to assure workers a reasonably safe workplace. The legislature placed such a responsibility on the employer and the owner."); Henderson v. Meredith Lumber Co., Inc., 438 S.E.2d 324, 326 (W. Va. 1993) (stating that the West Virginia Code imposes a statutory duty upon a West Virginia employer to provide and to maintain the employment

---

[3]The defendants contend that the shooting occurred after Mr. Farmer had spoken calmly with supervisory personnel, had displayed no signs of aggression, and was being escorted from the workplace by Bellofram employees. (Defs.' Mem. Supp. Mot. to Dismiss 5.)

place in a reasonably safe condition); but see Sowards v. Chesapeake & O. Ry. Co., 580 F.2d 713, 715 (4th Cir. 1978) ("But where one employee assaults another employee for the sole purpose of satisfying his own temper or spite, the employer cannot be held liable [under the Federal Employers' Liability Act] for such a wanton act." (citing Davis v. Green, 260 U.S. 439 (1922))). Considering the face of the complaint, this Court finds that the plaintiff has asserted a claim upon which relief can be granted. The plaintiff's allegations that the defendants violated their duty to maintain a reasonably safe workplace are sufficient at this stage to permit denial of the defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In their motion to dismiss, the defendants emphasize that they could not have reasonably anticipated that the series of events culminating in Mr. Farmer shooting the plaintiff would occur. (Defs.' Mem. Supp. Mot. to Dismiss 7.) The defendants claim they had no knowledge of the relationship between Mr. Farmer, the plaintiff, and Mr. Farmer's former girlfriend that resulted in the plaintiff's shooting. Without knowing that Mr. Farmer presented a security risk arising from circumstances unrelated to work, the defendants claim they could not have had a duty to maintain a heightened level of security at the plant. However, the question of whether the defendants knew of the intertwined relationships between the parties and Mr. Farmer's propensity for violence might

be, following discovery, factual issues that a jury could determine.

C. <u>Res Judicata and Collateral Estoppel</u>

The defendants argue that an employee's injury from an assault made upon him by a third party does not necessarily entitle him to compensation--he must also prove that the assault was directed against him as an employee or because of his employment. <u>See Baggett Transportation Co. v. Dillon</u>, 248 S.E.2d 819, 824 (Va. 1978). In this case, the defendants contend that the plaintiff's injury did not result from employment, but rather, it was due to a personal matter between Mr. Farmer and the plaintiff; therefore, the defendants are not liable for the criminal act of Mr. Farmer that was sparked by a dispute outside the scope of the plaintiff's employment. In support of this contention, the defendants reference the Workers' Compensation Commission's decision stating, "[t]he disability complained of was not due to an injury received in the course of and resulting from employment." (Defs.' Mem. Supp. Mot. to Dismiss 13.) Because the plaintiff asserted a workers' compensation claim and was denied, the defendants argue that he is now precluded from prosecuting the instant action.

The standard by which the court determines the preclusive effect of administrative adjudications is set forth in <u>Vest v. Board of Educ. of Nicholas County</u>, 455 S.E.2d 781, 785 (W. Va. 1995):

> For issue or claim preclusion to attach to quasi-judicial determinations of administrative agencies, at least where

there is no statutory authority directing otherwise, the
prior decision must be rendered pursuant to the agency's
adjudicatory authority and the procedures employed by the
agency must be substantially similar to those used in a
court. In addition, the identicality of the issues
litigated is a key component to the application of
administrative res judicata or collateral estoppel.

In this case, the West Virginia Code provides that "[t]he action of the Insurance Commissioner, private carrier or self-insured employer, whichever is applicable, is final unless the decision is protested within sixty days after the receipt of such decision." W. Va. Code § 23-5-1. Although the parties do not indicate whether the plaintiff filed a protest to the BrickStreet Mutual Insurance Company ("BrickStreet") decision, it is clear that no final hearing has been held with respect to the plaintiff's claims; therefore, this Court finds no preclusive effect to BrickStreet's determinations over the plaintiff's claims.

The issue of claim/issue preclusion in the context of workers' compensation claims and subsequent litigation was addressed in Corley v. Eastern Assoc. Coal Corp., No. 1:07CV114, 2009 WL 723120 (N.D. W. Va. Mar. 18, 2009). The opinion in Corley provides:

> Although the Claim Administrator issued alterative
> grounds for denying Mrs. Corley's claim, that decision
> cannot be given preclusive effect because it cannot be
> considered a "quasi-judicial" or administrative decision.
> Claim administrators are employed by "self-insured
> employers," in this case Eastern, to review and
> investigate claims. See W. Va. Code § 23-5-1. A
> claimant denied benefits by a claim administrator can
> "protest" that decision to the Board of Judges, which is
> the administrative agency. Thus, only a decision by the
> Board of Judges, or the Board of Review which reviews
> decisions by the Board of Judges, may be given preclusive
> effect. See Syl. Pt. 2, [Vest v. Bd. of Educ. of the
> County of Nicholas, 455 S.E.2d 781 (W. Va. 1995).].

Corley, 2009 WL 723120, at *7 n.1. Similarly, the claim decision made by BrickStreet rejecting the plaintiff's workers' compensation claim cannot be given preclusive effect.[4] As this decision was not made by the Board of Judges or the Board of Review, BrickStreet's conclusion does not bar the plaintiff's claim and res judicata/collateral estoppel does not apply in the context of this motion to dismiss.

IV. Conclusion

For the reasons stated above, the defendants' motion to dismiss defendants Bellofram Corporation, d/b/a Marsh Bellofram and Marsh Bellofram is hereby GRANTED. However, the complaint against Bellofram Corporation and Desco Corporation survives the motion to dismiss at this time, even in the face of a Twombly analysis. Thus, the defendants' motion to dismiss the complaint as to defendants Bellofram Corporation and Desco Corporation is hereby DENIED.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this memorandum opinion and order to counsel of record herein.

---

[4] Pursuant to West Virginia Code Sections 23-2C-1 to 24, the Workers' Compensation Commission was abolished on January 1, 2006, and was succeeded by BrickStreet, a private employer mutual insurance company. Casdorph v. West Virginia Office Ins. Com'r, 690 S.E.2d 102, 104 n. 3 (W. Va. 2009).

DATED:    September 20, 2010

                                    /s/ Frederick P. Stamp, Jr.
                                    FREDERICK P. STAMP, JR.
                                    UNITED STATES DISTRICT JUDGE